The CLIFFORD ROSS COMPANY, LTD., Plaintiff,

v.

NELVANA, LIMITED, Defendant.

No. 89 Civ. 1881 (KC).

United States District Court, S.D. New York.

April 13, 1989.

**518**

Gold, Farrell & Marks, New York City, for plaintiff.

Moses & Singer, New York City, for defendant.

CONBOY, District Judge:

This case involves a struggle to control the kingdom of Babar the Elephant, a fictional place and character in the hearts of European and American children since the early 1930's. In the idiosyncratic parlance of the exploiters and the lawyers, Babar has become, undoubtedly to the horror of Queen Celeste, his elephant children, and Zephir the monkey, "a classic literary property."

Over fifty years ago, Babar first appeared in what was to become a series of gently nuanced and gracefully illustrated stories created and published by the French artist and writer of children's books, Jean de Brunhoff. In the world of Babar, all colors are pastel, all rainstorms are brief, and all foes are more or less benign. Harmony invariably banishes discord, and a serene sensibility and benevolence emanates from Babar, and delivers his family and subjects from the harshness and mi-

sery of life. The story lines are suitably straightforward, but are nonetheless possessed of a deep and satisfying appeal to children, since they celebrate the persistence of goodness, work, patience and perseverance in the face of ignorance, discouragement, indolence and misfortune. Would that the values of Babar's world were evident in the Court papers filed in this lawsuit.

In the winter of 1985, Clifford Ross, the principal of the plaintiff herein, began negotiations with Mr. de Brunhoff's son Laurent, to acquire exclusive rights to "develop" Babar in nonprint media. He obtained an option to acquire motion picture, television, merchandising and allied rights in and to the Babar property in January, 1987 ("the Underlying Agreement"). He agreed therein to develop the property in accordance with a "high standard" of "style, appearance and quality." On March 31, 1987 Mr. Ross's Company signed an agreement ("the Agreement") with defendant, Nelvana Limited ("Nelvana"), a Canadian animation studio and entertainment company, whereby Mr. Ross assigned to Nelvana the option to acquire the Babar rights, subject to certain terms and conditions.

The principal parts of the Agreement that are in dispute in this action are paragraphs 4 and 10. Paragraph 4 expressly reserves to Plaintiff certain artistic rights:

(a) *Ross, as representative of the authors of the Property shall have the right of full prior creative consultation regarding productions and all elements thereof,* including artwork, stories, scripts, characters, character voices, principal music, directors and writers. Clifford [Ross] shall be permitted to be present during all stages of production for this purpose.

(b) *Ross shall have the right of prior creative approval* of designs and voices of the principal characters. (emphasis added)

Paragraph 10 expressly reserves to both parties the right to jointly license the merchandising of the Property:

Nelvana and Ross *shall jointly license the Property worldwide,* subject to the

merchandising rights retained by Owner under the Underlying Agreement, *and shall mutually select any licensing agent or agents whose services may be utilized in connection therewith.* Nelvana and Ross shall share equally all merchandising receipts from licensing of the Property after deduction of fees actually paid and Owner's share under the Underlying Agreement. . . .

Merchandising receipts shall be accounted for separately from, and shall not be cross-collateralized against any other amounts payable to Ross. (emphasis added)

Ross now asserts that Nelvana began breaching the Agreement in or about August, 1988, and continues to do so. In substance, he claims that licensing agreements with third parties have been and are being entered into without his approval, and that he is being "locked out" of his artistic consultative role with respect to a full length feature film utilizing the Babar property, which is currently in production at Nelvana facilities and is scheduled for national release during the summer of 1989.

In August, 1988 disputes arose between the parties which concerned merchandising rights and procedures under Paragraph 10 of the Agreement. In general terms, these involved quality control of the products to be manufactured under third party licenses, and the accounting of income and expenditures associated with such licenses. A formal meeting was had between the parties and their counsel in New York on September 15, 1988 to explore and resolve these questions. Between that date and the filing of this action in State Supreme Court on February 20, 1989, the parties had extensive contacts and correspondence designed to facilitate resolution of their differences. Nelvana removed the action here on March 17, 1989. Ross then sought a temporary restraining order on March 27, 1989 and upon an informal agreement to maintain the status quo, this Court conducted a hearing upon Ross's request for a preliminary injunction on March 31, April 3, 11 and 12, 1989.

Plaintiff asked the Court in substance to preliminarily enjoin defendant from a) entering into any agreements involving the merchandising or marketing of the Babar property without plaintiff's approval; b) holding itself out as the sole licensor of the merchandising rights of the property; c) disposing of or expending any monies received in connection with the merchandising of the Babar property without plaintiff's consent and d) proceeding with any television or motion picture productions involving the Babar property without affording plaintiff his artistic consultative and approval rights under Paragraph 4(a) and 4(b) of the Agreement.

The Court has had a full opportunity to hear and assess the credibility of the two principals of the parties in the case, Clifford Ross and Michael Hirsch, and has carefully considered the testimony of other witnesses, and reviewed the comprehensive documentary record admitted on the hearing.

The Court is unpersuaded, at least upon the evidence thus far submitted, that Mr. Ross has been excluded from the production of the Babar motion picture currently in progress. Indeed, in the detailed documentary record of the discussions of differences between the parties that cover the period September, 1988 through February, 1989 there is no assertion of such exclusion. Furthermore, the testimonial evidence of Mr. Ross on this point is insufficiently definitive and concrete to warrant injunctive relief based upon the rights reserved to him under Paragraph 4(a) of the Agreement. Clearly, if the assurances of Mr. Hirsch on the witness stand that Mr. Ross's rights under Paragraph 4(a) will be fully respected in the future, are not honored, renewal of the application of plaintiff for injunctive relief on this ground can be pursued. Counsel for the plaintiff conceded on the hearing that the case for injunctive relief in connection with plaintiff's rights under Paragraph 4(b) of the Agreement had not been made out. With respect to the plaintiff's request for control over all expenditures of money connected to the Babar property, it is sufficient to

observe that no irreparable injury has been established in the absence of such relief.

■ The claims of Mr. Ross in connection with his rights under Paragraph 10 of the Agreement are quite another matter. In the course of the hearing, and pursuant to Court order, Nelvana delivered to Ross documentary evidence of a substantial number of franchise agreements which had been sent to prospective licensees without Mr. Ross's formal approval. Exhibit 64A. Mr. Ross categorically denied on the witness stand ever approving or even knowing about these transactions. Interestingly, Nelvana declined to challenge Mr. Ross's testimony given in connection with Exhibit 64A, which is a summary of 64 license transactions in various stages of formation involving the Babar property. Mr. Hirsch asserted, as did an official of Nelvana by affidavit, that Mr. Ross had orally approved certain proposed licenses, but no documentary evidence of such approval in the form of letters, fax transmissions or even notations to file was produced. It is further generally conceded by Nelvana that numerous proposed or fully executed licenses do not contain quality control provisions, which are asserted by Ross to be indispensable to the maintenance of his firm's reputation for high standards of classic literary property exploitation. Ross further observes that he is obligated to Jean de Brunhoff to maintain such standards through his participation in the management of the Babar property.

Nelvana's position on the character of the rights conveyed to Ross under Paragraph 10 of the Agreement is simply inexplicable. Defendant insists, in the face of the plain meaning of the words "Nelvana and Ross shall jointly license the Property worldwide ..." (Agreement, Para. 10, Clause one), that the only joint rights the parties have shall be to "mutually select any licensing agent ..." (Agreement, Para. 10, Clause two). The absurdity of such a reading is apparent. Clause one deals with licensing rights and empowerment regarding the property itself, while clause two deals with a clearly ancillary and secondary right of selecting one method of finding potential licensees. Nelvana's reading renders the clauses redundant, and more to the point, is flatly contradicted by a long course of conduct between the parties, wherein Nelvana routinely sought Ross's approval, and specifically quality control approval, of various proposed licenses.

Whether Ross and Nelvana are formal partners or joint venturers need not be decided for purposes of this application. I conclude, based upon the present record, that the parties intended that in the approval of licenses for the Babar property, neither could authorize such a license without the approval of the other. I further find, and it is implicitly conceded by Nelvana and established conclusively by the documents in evidence, that Nelvana has repeatedly acted unilaterally in the issuance and approval of such licensing agreements with third parties.

Nelvana asserts that Mr. Ross has withheld his approval unreasonably. The Court observes that such a withholding is hard to establish when there is uncontroverted evidence that Mr. Ross had no knowledge of the negotiation and issuance of numerous licenses. Furthermore, I am satisfied, based upon the evidence, that Mr. Ross sought, and has a right to have, a logical, systematic and formal contracting process with licensees that will assure quality control and high standards in the exploitation of the Babar property. The so-called "deal memos" process is simply inadequate to provide Mr. Ross with the measure of formality and control which he has a clear right to insist upon under Paragraph 10.

The Court therefore concludes that plaintiff has demonstrated a likelihood of success on the merits. I find further that Mr. Ross has proven irreparable harm to his reputation if the exploitation of Babar continues without regard to his high standards of quality control, which can only be effectuated through a procedure of joint, formal approval by both Mr. Ross and Nelvana, of each license. The loss of potential profits from quality exploitation of Babar never pursued would simply be unascertainable. Furthermore, it is well established that loss to artistic reputation, and Mr. Ross has

established that he does have such a reputation, cannot be compensated for in money damages.

Nelvana insists that injunctive relief is inappropriate because Ross did not seek it soon after disagreements arose in August, 1988. Two factors dispose of this issue. First, Ross was unaware of the true and pervasive extent of the violation of his contract rights until this Court's order produced during this hearing the records of unilateral license negotiation and approval by Nelvana, summarized on Exhibit 64A. Second, the intervening period has been consumed by constructive, responsible and accommodating efforts by plaintiff's legal counsel to resolve the matter without litigation.

Accordingly, it is hereby ORDERED that defendant, its officers, directors, agents, employees and representatives, are hereby preliminarily enjoined, during the pendency of this action, from (i) entering into any contracts, agreements, arrangements or understandings of any kind, with any person involving the merchandising or marketing of the fictional character known as "Babar", including names, titles, characterizations, themes, plots, actions, characters, settings, illustrations and stories containing such characters (hereafter the "Property") without the formal, written approval of plaintiff and (ii) holding Nelvana out to the public or to any person as the sole licensor of merchandising rights to the Property; and

IT IS FURTHER ORDERED that plaintiff furnish security in the amount of $100,000 for the payment of such costs and damages as may be incurred or suffered by defendant if it is hereafter determined that defendant has been wrongfully enjoined hereby.

SO ORDERED.